DAVID E. FARRAND, ADMR. *v.* ROLLA GLEASON.
[IN CHANCERY.]

*Partnership. Tenancy in Common. Repairs by One how
far Chargeable to the Other.*

The orator's intestate, the defendant, and one B. entered into a written contract to purchase a certain piece of land, and erect a steam saw mill thereon, with the requisite machinery. They were to hold the property jointly, share equally in the expense, and equally in the profits " arising from said property, whether it be by sale or leasing the same." They purchased the land, erected the mill building, and then made a second contract, by which, if any one of the parties was to more expense in building than the others, it was to be paid back to him by them, and he was to have a lien on the interest of each as security. They did not agree upon a partnership, or partnership name, or business, or capital; and neither could pledge the credit of the others. A bill having been brought for an accounting and foreclosure; *Held,*

1. The parties were tenants in common, and not partners.
2. A tenant in common can compel his co-tenant to share in the expense of *necessary repairs*; but not permanent improvements.
3. Each could make repairs so far as the contract provided.
4. If one has made permanent improvements, on a division, he should be allowed therefor so much as the same have enhanced the value of the property, so far as it may be set to the others.
5. The orator cannot be allowed for double boarding the mill, or putting in the tank, inspirator, platform, or new boiler; but unless the defendant elects to allow him to remove the same, so far as they are capable of being removed without substantial injury to the common property, he should be charged with such of these as cannot be so removed, or such as he shall elect not to have removed, at such a sum as they now enhance the value of the common property. Nor can the orator be allowed for insurance.
6. The failure to charge on book did not conclude the right to have an allowance made.

7. The rent for the mill while occupied by the orator's intestate should be such as it was worth without the improvements.

8. Neither party should be charged with the use of the property, when unoccupied without the fault of either.

BILL in chancery for an accounting and foreclosure. Heard on bill, answer, traverse, master's report, and exceptions thereto, at chambers, ROWELL, chancellor. Bill *pro forma,* dismissed. The contract of March, 1876, was as follows:

"It is hereby agreed by and between us, Rolla Gleason, Saul Bishop, and J. A. Beers, that we will share equally in the expense of purchasing one and one-half acres of land in Bolton, a part or the whole of which was lately occupied by M. W. Shurtliff for mill purposes, the chimney, steam boiler, and engine now upon said premises, and also in erecting a boiler and engine house of brick; also in erecting a mill building of wood, one hundred feet long and thirty feet broad, two stories high, with two floors and a good foundation, said mill building to be located near the same spot where the said Shurtliff mill lately stood; also, in putting in good order the boiler, chimney, and engine, for the purpose of driving the machinery in said building to be erected; also, in the expense of putting into said mill such shafting and pulleys, as shall be necessary to drive such machinery, as it shall be thought best to have in said mill, and belting to connect said main line of shafting with said engine; also, in keeping said property in good repair; that the title of all such property shall be in us jointly; and that we shall share equally in all the profits arising from said property, whether it be by sale of leasing the same.

We also agree to share equally in furnishing railroad ties sufficient to support a track from said mill building to the main line of the Central Vermont railroad, and in grading the ground for the same, providing said railroad company will furnish rails for the same." [Signed.]

Contract of July 17, 1877.

"It is hereby agreed by and between us, Rolla Gleason and Saul Bishop and J. A. Beers, of Bolton, * * * being equal shareholders in the steam mill in Bolton, that if in completing and carrying out the agreement entered into by us, any one of us shall be to more expense than either of the others when said mill be completed according to the above mentioned agreement, or at any other time, they shall pay to him separately such an amount as will make their shares equal or to make one-third of

the whole expense of so completing and carrying out the above mentioned agreement, and their interest in said mill premises shall be holden to him for such non-payment. And if any two of us shall be to more expense than the other one, then he shall pay such two shareholders the amount that they have paid over and above their share, or one-third of the whole, and his interest in said mill premises shall be holden to them for such non-payment, and the first profits may be applied for such payment. And it is further agreed that Saul Bishop shall not be liable for any expenses which have not already accrued unless he feels disposed to pay, and his interest may be such share as he pays." [Signed.]

The mill was started August 27th 1877; Beers commenced to occupy it September 1, 1877, and continued to occupy it under a verbal agreement, till February, 1881, at which time he deceased; and the orator occupied from February till July 20, 1881.

*W. P. Dillingham* and *C. F. Clough*, for the orator.

The parties were partners. *Chapman* v. *Devereaux*, 32 Vt. 616; *Kellogg* v. *Griswold*, 12 Vt. 291; *Brigham* v. *Dana*, 29 Vt. 1; *Duryea* v. *Whitcomb*, 31 Vt. 395. There may be a partnership in buying and selling land. *Dudley* v. *Littlefield*, 21 Me. 418; *Ludlow* v. *Cooper*, 4 Ohio St. 1; *Sumner* v. *Hampson*, 8 Ohio 328; *Rice* v. *Barnard*, 20 Vt. 479; *Smith* v. *Tarleton*, 2 Barb. Ch. 336.

If a partnership existed between the parties, Beers was authorized by law as a partner to make all expenditures that came legitimately within the scope of the partnership concern, and if he acted in good faith, the other parties are bound by his acts. Col. Part. 195; Story Part. s. 1; *Greely* v. *Wyth*, 10 N. H. 16. See *Dwyer* v. *Clark*, 5 Met. 562; 1 Am. Lead. Cas. (5th ed.) 494; 1 Lead. Cas. Eq. (4th ed.) 272; 39 Ill. 54; 9 Paige, 178.

*J. A. Wing*, for the defendant.

The parties to the contracts were tenants in common. *Duryea* v. *Whitcomb*, 31 Vt. 395; Story Part. s. 83. A tenant in com-

mon cannot make permanent improvements and charge his co-tenant without his consent. *Kidder* v. *Rixford*, 16 Vt. 169 ; 4 Kent Com. 369 ; 1 Wash. R. P. 663 ; *Kline* v. *Jacob*, 68 Penn. St. 57 ; *Biddle* v. *Reed*, 33 Ind. 529.

The opinion of the court was delivered by

Ross, J.   I.   Was the relation between the orator's intestate and defendant that of partners or of tenants in common? This is the first question to be determined.   The orator contends that it was that of partners, and the defendant, that of joint tenants or tenants in common.   The defendant does not seriously insist that they were joint tenants.   Their relation is manifestly to be determined from the contracts of March 1, 1876, and of July 17, 1877, and their dealings with each other in regard to the subject matter of said contracts.   The subject of the contracts was real estate.   Doubtless a partnership might exist for dealing in real estate.   Such partnerships are, however, unusual. One of the usual elements of a partnership consists in clothing each partner with full power to buy and sell the partnership property.   A perfected sale implies that which alone in real estate transactions can make the sale effective—a conveyance. It is evident that each partner in a partnership in regard to real estate cannot be clothed with the power of making a perfected sale thereof.   From the nature of the property, the title must be vested either in one or more or all the partners.   Those holding the title alone can convey real estate.   From its nature, and the legal requirements in regard to conveying title to it, real estate alone has rarely been the sole subject-matter of a partnership. It is frequently held by the partners as partnership property, when necessary for the proper transaction of the partnership business, or when taken in payment of partnership debts, or purchased with partnership funds.   Then, for the purpose of closing the partnership or paying partnership debts, it is frequently treated as personal property. 1 Pars. Con., chap. 12, sec. 2. Mr. Washburn, in his work on Real Property, vol. 1, p. 422, says: "Independent of the rights of creditors, such estate will

Farrand *v.* Gleason.

be held by the owners as tenants in common, with all the inci-
dents of such estates." The partners were at common law never
treated as joint tenants of such real estate. It partook of the
character of stock in trade, held subject to the hazard of profit
or loss. By the law merchant, the right of survivorship, or
*jus accrescendi*, did not attach to such real estate. Co. Lit.
182, a. Hence, from the nature of the property, the limitations
of the agency of each partner in making a perfected sale, courts
are not inclined to imply a partnership where the subject-matter
is real estate alone. Looking into the contracts of March 1,
1876, and July 17, 1877, nothing is found indicative of a clear
intention to form a partnership. No partnership, nor partner-
ship name, nor partnership business, nor capital is agreed upon.
The parties agree to purchase certain property and fit it up for
certain purposes, and to be at equal expense in doing it, and to
share equally the profits that may arise from selling or leasing
the property. They do not contemplate the carrying on of any
business upon, or in connection with, the property so to be pur-
chased. Each was in his own way to furnish his share of the
funds necessary to accomplish the purposes of the contracts. In
fitting up the property, as required and contemplated by the
contract of March 1, 1876, each bought upon his individual
credit. He had no right to pledge, and did not attempt to
pledge, the credit of the three for such purchases. The contract
of July 17, 1877, recognizes the fact, that they have not contrib-
uted equally to the purchase and fitting up of the property, that
their contributions have been made as individuals, and gives the
larger contributor or contributors thereto, a lien upon the share
of smaller contributor or contributors, and provides that the
first profits shall be applied to equalizing the several shares. It
speaks of the several owners as shareholders and not as partners.
All the provisions of these contracts, as well as all the conduct
of the parties, are consistent with a tenancy in common in the
property, while they lack many of the distinctive elements and
characteristics of a partnership therein, if not absolutely incon-
sistent therewith. We think that the defendant's contention

must prevail in regard to the relation of the orator's intestate to the defendant and the property in question, under these contracts, and the interpretation put upon them by the conduct of the parties.

II. The general doctrine is, that one tenant in common can compel his co-tenant to share in the expense of *necessary repairs* to the common property, by requesting him so to do. If the co-tenant refuse to join in making such repairs, he may, after such request and refusal, make them and recover of the co-tenant for his proportionate share. But he cannot, without the consent of his co-tenant, make permanent improvements upon the common property at the expense of the tenants in common. If he desires to improve his share of the common property beyond what his co-tenants will consent to, he must resort to a petition for partition, so that he can own his share in severalty. 4 Kent Com. 420 to 423 (*370. 371); 1 Wash R. P. 420, 421; *Kidder* v. *Rixford*, 16 Vt. 169.

By necessary repairs is meant such as are needful for the proper preservation of the property. The contracts show that the parties bound themselves, and so consented, to rebuild the mill and motive power and keep it in proper condition for sale or rent. Subsequently they decided to rent the property. By the contracts, and their action thereunder, each party consented to do whatever was necessary to put the property in the condition contemplated by the contract of March 1st, 1876, and to keep the same in a state of repair suitable for renting. To this extent the parties have consented to be bound in regard to fitting up and keeping the common property in repair. Each might make outlays on the common property to this extent, but not beyond, without the special consent of the others, and be allowed therefor in the final accounting. It is also well settled, as shown by the authorities before cited, that if one tenant in common has made permanent improvements upon the common property, which have not been consented to by the others, on a division of the property, he shall be allowed therefor so much as the same have enhanced the value of the common property, so far as the same shall be set to

such others in the division. It is also settled that unless one tenant in common has become the bailiff of the common property for the others, he can be made accountable for only so much as he has received more than his share of rents and profits arising from the use of the common property. Applying these well settled principles of the common law in regard to the rights and liabilities of tenants in common for outlays upon the common property, to the exceptions taken by the respective parties to the master's reports, and it results that the estate of the intestate, which now represents the share originially owned by Bishop, as well as the share owned by himself, cannot be allowed for the expense of double boarding the mill, nor of putting in the tank and inspirator, nor of putting in the platform, nor of putting in the new boiler, including the setting. But, inasmuch as the bill prays for a final accounting, and charging whatever may be found due the estate upon the one-third share of which the defendant holds the legal title, unless the defendant elects to allow the orator to remove some or all of these, so far as they are capable of being removed without substantial injury to the common property, he should be charged with such of these as cannot be so removed, or such as he shall elect not to have removed, at such a sum as they now enhance the value of the common property; and the estate and orator should be charged with such rent as the property used by it and the orator was fairly worth without these additions or improvements. The insurance, so far as appears, was wholly for the benefit of the intestate and administrator, and there is no good reason shown for charging the defendant with any portion of the same. The rent paid for the use of the rails for the side track was properly allowed. The original contract contemplates putting in the side track.

The exceptions in regard to allowances not charged on the intestate's book are not well taken. Such charges would be but evidence bearing upon whether the outlays were made, and, if made, whether with the expectation of charging the same against the common property. The failure to charge did not conclude

the right to have an allowance made, if brought within the principles already announced.

The exception for the allowance to the estate for furnishing the motive power to Eastman is not well taken. Under his lease the intestate was obliged to furnish only power enough to run his own machinery. It is evident that he was to additional expense in furnishing power for Eastman, which by the terms of the lease the three tenants in common were to furnish; and he should be allowed therefor in determining the sum for which the estate should account as rent received from Eastman. The findings of the master with reference to the term of the Eastman lease, which the intestate purchased in, appear inconsistent and irreconcilable. He refers to the lease, which gives the time as three years, with the right to extend it to five years, but finds "and the term was to begin from the time Eastman got his machinery in, and to run for one year, with the privilege of three." How the written lease came to be thus changed, if changed, is wholly unexplained. The intestate having purchased the lease of Eastman, assumed his liabilities in regard to payment of rent. If the lease was for a term of three years, the orator should account for the rent for that time whether he occupied and operated that portion of the premises leased to Eastman or not. If, however, the term was legally changed to one year, the allowance of the master in regard to this is correct. We cannot determine as to the exceptions on this point, covered as it is by apparently contradictory findings of the master. As the case must go to a master for further findings, and for making up the general balance, what has been said on this subject will be a sufficient guide for the chancellor.

We think the orator's exception was well taken. He had no use for the mill, and it is not shown that he could have had any without stocking the mill. As administrator he was under no duty to do so. The master has negatived that he had an opportunity to rent before he rented to Learnerd. As we understand the facts as finally found by the master, the orator, during the period for which the master has charged him with rent, when

the mill was not operated, from March to October, 1882, did not deny the defendant's right in the common property, nor his right to occupy it if he chose. The orator was under no more obligation to put the common property to use than was the defendant, and neither should be charged with its use when it stood unoccupied without the fault of either, or with the common fault of both.

This disposes of the exceptions of both parties to the master's report.

The result is that the *pro forma* decree of the Court of Chancery is reversed and the cause remanded with a mandate to that court to proceed with the accounting according to the views herein expressed; and if the same shall result in a balance due from the defendant to the orator in his capacity of administrator, to make the same a charge upon the defendant's share, and fix a time in which the defendant shall pay the same or be foreclosed, or to render such a decree as the facts as finally established shall require.