E. P. WOODBURY ET UX. *v.* C. N. STETSON ET UX.

January Term, 1936.

Present: SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ., and BUTTLES, Supr. J.

Opinion filed February 16, 1936.

*M. G. Leary* and *Bernard J. Leddy* for the defendants.

*A. Pearley Feen* and *Louis Lisman* for the plaintiffs.

Slack, J.   General assumpsit to recover the following items:

¼ expense cleaning springs and repairs, 1931   $  6.00
        same                                  1932     15.00
        same                                  1933      5.00
Share of costs installing new pipe line, etc.....    150.00
Interest two years.........................     18.00

Plea, the general issue. The case is here on defendants' exceptions to the refusal of the court to direct a verdict for them at the close of the evidence, and to certain parts of the charge. They also challenge the jurisdiction of the court of the subject matter shown by the evidence.

The plaintiffs are husband and wife. So are defendants. Nelson and Amanda Jones formerly owned a tract of land, with buildings thereon, that extended westerly from Shelburne Road, so called, to Lake Champlain. They also owned about two acres of land located east of the road, on which were several springs of water. They developed these springs, constructed a reservoir and laid a pipe from the reservoir to the buildings on their property on the west side of the road. This entire property was later conveyed to George M. Allen and his wife.

Still later it was divided up, and in 1927 the land west of the road was owned, severally, by the plaintiffs, the defendants, the Allenwood Inn Co., Inc., and one Ramsdell. The plaintiffs hold title to the land, springs, and reservoir east of the road, and the pipe line from the reservoir to the land west of the Rutland Railroad right of way which extends north and south across the land west of the road; and have the right to enter upon the latter land to repair or relay said pipe. The deed of the pipe line contains the following: "Subject, however, to the right of the Allenwood Inn Co., Inc., its successors and assigns, and the rights of the holders of the title of the said Jones property to take water from said line as the same was used November 12, 1924, without detriment to other users thereof." It is conceded that defendants have the right, in common with Woodbury and Ramsdell, to take water through this system. Prior to 1931 the three did whatever was necessary to keep the system usable, without charge. In 1931, 1932, and 1933, respectively, Woodbury paid out for cleaning springs and repairs, $24, $60, and $20, one-fourth of which is charged in the first three items in the specification. Subsequent to paying these bills, Wood-

bury sent defendants a statement of what he claimed to be their share. As far as appears, such statements were the first information defendants had regarding the work covered by these bills, or the necessity therefor. They have not paid them.

For some years prior to 1931 all of the takers from this system were troubled, at times, to get enough water. Stetson, called as a witness by plaintiff, testified that this trouble began "about the time Mr. Woodbury purchased the property known as the Allenwood Inn," which Woodbury operates as a summer hotel. Woodbury testified that the old pipe was badly corroded, so that all takers did not get more than a fourth inch stream; that he got more than the others because his premises were lower; that prior to 1931 he discussed the water supply several times with Ramsdell, but was not sure that he ever talked with defendants about it; that he knew that they were not getting water enough; that in 1930 and 1931 he put in a new pipe line from the reservoir east of the road to near his summer home on the lake front, and there connected it with the old line running to Allenwood Inn; that this system is for use from May first to November first, only; that it is constructed most of the way on top of the ground or near the surface, and is cut off about November first each year, and cleaned out, to keep it from freezing and bursting; that its connection at the reservoir is about eight inches above the old line connection, so it does not affect the flow of water through the latter; and that the old pipe is laid below the frost line and is usable the year round. Ramsdell paid Woodbury $150 toward the new system, and has connected with it, and takes water from both systems. Defendants have not connected with the new system, but still use the old one. They get more water than they formerly did. Stetson testified that, at the time the new line was installed, he talked with Ramsdell about it, the expense of it and how Woodbury planned to apportion the expense between Woodbury, Ramsdell, and himself, but there was no evidence, or claim, that Ramsdell then represented Woodbury, or ever told him about this conversation with Stetson, or that defendants ever talked with plaintiffs, or either of them, about the new line before it was laid, or ever agreed to share any part of the expense. They have not. This is item four of the specification: $150 is less than one-

fourth of the cost of the new line from the reservoir to where Stetson would naturally connect with it.

The defendants contend that if plaintiffs have a cause of action against them, on the showing made by plaintiffs' evidence, it is in equity. At the common law, the writ of *de reparatione facienda* was the only means whereby one tenant in common could compel his co-tenant to join in the expense of necessary repairs to the common property, and this was brought before the repairs were made, to compel them to be made under order of court. Rapalje & Lawrence Law Dict., vol. I, p. 347; *Calvert* v. *Aldrich*, 99 Mass. 74, 96 A. D. 693. Then the court of chancery took jurisdiction of the matter, and later the action of account provided by Statute of 4th Anne, ch. 16, sec. 27, furnished a co-tenant a remedy against his co-tenant for money expended for necessary repairs. Mr. Chitty, in his work on Pleadings (1859), vol. I, p. 38, says that: ''At law, one *partner or tenant in common* cannot in general sue his co-partner or co-tenant, in any action, in *form ex contractu,* but must proceed by action of account,'' provided by the statute above referred to, ''or by bill in equity.'' Chancellor Kent says that for one tenant in common to sustain an action against his co-tenant for his proportionate share of the expense of necessary reparations, there must be a request to join in the reparation, and a refusal, and the expenditures must have been previously made. 4 Kent Com. *370. What form of action the author had in mind does not appear. It is said in 7 R. C. L. 891 that *assumpsit* cannot be maintained by one co-tenant against his co-tenants for either improvements or repairs, in the absence of an express agreement, or assent, on the part of those sought to be held, or such circumstances or dealings between the parties as will convince the court that an understanding existed to the effect that the expenses were to be repaid. To the same effect is 62 C. J. 506. There are cases that hold that assumpsit will lie for contribution for necessary repairs after a request upon, and refusal by, co-tenants to join therein. *Rumford* v. *Brown,* 6 Cowan (N. Y.) 475, 16 A. D. 440; *Taylor* v. *Baldwin,* 10 Barb. (N. Y.) 582; *Stevens* v. *Thompson,* 17 N. H. 103. It is held in *Ballou* v. *Ballou,* 94 Va. 350, 26 S. E. 840, 64 A. S. R. 733, that assumpsit will not lie for *improvements,* but will for repairs necessary for the use and preservation of the property when plaintiff's ''fel-

lows refuse to unite'' in making them. And in *Haven* v. *Mehlgarten*, 19 Ill. 91, one co-tenant was permitted to recover in *indebitatus assumpsit* for necessary repairs made in the *absence* of his co-tenants, without special request or implied promise. To the same effect are *Russell* v. *Russell*, 62 Ala. 48, and *Fowler* v. *Fowler*, 50 Conn. 256. We have found no case where assumpsit has been sustained by one co-tenant to recover for *improvements* made by his co-tenants in the absence of an agreement, express or implied, to do so; and, as far as we are aware, the action has never been resorted to before, in this jurisdiction, to recover for *repairs* made by a co-tenant.

■ ■ We said in *Farrand* v. *Gleason*, 56 Vt. 633: ''The general doctrine is, that one tenant in common can compel his co-tenant to share in the expense of *necessary repairs* to the common property, by requesting him so to do. If the co-tenant refuse to join in making such repairs, he may, after such request and refusal, make them and recover of the co-tenant for his proportionate share. But he cannot, without the consent of his co-tenant, make permanent improvements upon the common property at the expense of the tenants in common.'' To the same effect are *Middlebury Electric Co.* v. *Tupper*, 70 Vt. 603, 41 Atl. 582, and *Duplesse* v. *Haskell & Bilow*, 89 Vt. 166, 170, 94 Atl. 503. All of these suits were in equity, and the question of whether a recovery could be had for the items there involved, in general assumpsit, was not in issue.

■ ■ The foregoing authorities clearly preclude a recovery for items 4 and 5 of the specification in this form of action. By no stretch of the imagination can the new system be regarded as a repair of the former one. Its only relation to the old system is that it takes water from the same source. It is a permanent improvement, designed for use only during that part of the year when plaintiffs occupy their premises, and is far less in the nature of repairs than was the work done in *Middlebury Electric Co.* v. *Tupper, supra*, for which recovery was denied. There was no evidence, viewed in the light most favorable to the plaintiffs, that defendants expressly or impliedly agreed to bear any part of the expense incident to its installation, or by assent or ratification obligated themselves to do so. Neither did it appear that there was a request upon, and refusal by, them to join in the work. It is urged that, since they got

more water because of the new system, they "would be permitted unjustly to enrich themselves if they were not forced to pay that part of the expense which they understood it was expected they would pay when the correction of the existing condition was undertaken." The only evidence of such understanding was Stetson's testimony regarding this talk with Ramsdell above stated. There was no evidence of the attitude Stetson then took regarding the matter, or, as we have seen, that Ramsdell was then acting for Woodbury, or that he reported such talk to him, or that the subject was ever mentioned between plaintiffs and defendants.

■ ■ Nor do the authorities relied upon by plaintiffs support a recovery, in this form of action, for the remaining items in the specification. Most of the cases cited by them, including *Mills* v. *Hyde*, 19 Vt. 59, 46 A. D. 177; *Liddell* v. *Wiswell*, 59 Vt. 365, 8 Atl. 680, and many cases collected in 4 R. C. L., all of which have been examined, are by a surety against a co-surety to compel contribution. The others are clearly distinguishable from this case. Assumpsit is held to lie by one co-surety against another because the obligation arises from an equitable duty which the sureties are supposed to be cognizant of, and assent to, at the time they enter into the contract of suretyship. Such is not the status of co-tenants as to necessary repairs to the common property, at least in this jurisdiction. The contract, into which they enter, contemplates that they shall be consulted about, and given an opportunity to join in, such repairs; and they are not liable, even in equity, unless they are. *Farrand* v. *Gleason, supra; Middlebury Electric Co.* v. *Tupper, supra; Duplesse* v. *Haskell & Bilow, supra.* Plaintiffs claim that there was an implied understanding or agreement respecting all items of the specification. We have disposed of items 4 and 5. As to the others, the implication, if any, was in defendants' favor, since all repairs prior to 1931 had been made by the parties, without charge. And, as seen, there was no evidence that defendants were requested to join in the 1931, 1932, or 1933 repairs, knew that they were necessary, contemplated, or had been made, until after the work had been done and they received a statement from Woodbury of what he considered to be their share. Neither was there evidence that these repairs were of an urgent nature, or that defendants were absent when

they were made so that they could not have been requested to join in them. In the circumstances, assumpsit will not lie for any part of plaintiff's claim.

Other questions raised need not be considered.

*Judgment reversed and judgment for defendants to recover their costs.*